AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | |
| ONE BLACK APPLE iPHONE CELLULAR PHONE, | ) | Case No.    23-mj- 630  (GLF) |
| CURRENTLY LOCATED AT  4525 US HIGHWAY 11, | ) | |
| MALONE, NEW YORK 12953 | ) | |
| | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(i) & (v)(I) | Bringing or Attempting to Bring in Aliens and Conspiracy to Do the Same |
| 8 U.S.C. §§ 1324(a)(1)(A)(ii) § (v)(I) | Transporting or Attempting to Transport Aliens and Conspiracy to do the Same |
| 8 U.S.C. § 1326(a) | Illegal Entry of Removed Aliens |

The application is based on these facts:
Provide the facts here.

☒ Continued on the attached sheet.
☒ Delayed notice of <u>30</u> days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____   10·31·2023   6:20 a.m.
*Applicant's signature*

Jason H. Soucis, U.S. Border Patrol Agent-Intelligence
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date:  *October 31, 2023*                    _____
                                              *Judge's signature*

City and state:  Plattsburgh, New York        Hon. Gary L. Favro, U.S. Magistrate Judge
                                              *Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:

One black Apple iPhone cellular phone
currently located at 4525 US Highway 11,
Malone, New York 12953.

Case No.    23-mj- 630   (GLF)

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jason H. Soucis, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), Swanton Sector Intelligence Unit and assigned to the Burke Border Patrol Station. I have been a BPA since April 2012. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United

States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.      I have investigated violations of the Immigration Nationality Act (INA), including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, the smuggling of aliens in violation of Title 8, United States Code, Section 1324, and illegal reentry of aliens in violation of Title 8, United States Code, Section 1326. I am a "Federal law enforcement officer," with the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.      The applied-for warrant would authorize the forensic examination of the Device, as described herein and in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of federal criminal laws, including Title 8, United States Code, Sections 1324(a)(1)(A)(i) & (v)(I) (bringing or attempting to bring aliens and conspiracy to do the same), 1324(a)(1)(A)(ii) & (v)(I) (transporting or attempting to transport aliens and conspiracy to do the same), and 1326(a) (reentry of removed aliens) have been committed by Jose CHOLULA-Trujillo, and other as-yet identified co-conspirators. There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

2

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      As described further in Attachment A, the property to be searched is: one black Apple iPhone cellular phone (the "Device"), which is currently located at the Burke Border Patrol Station, 4525 US Highway 11, Malone, New York 12953 ("Burke Border Patrol Station").

7.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.      On October 19, 2023, at approximately 10:15 p.m., Burke Border Patrol Agents (BPAs) encountered a black Dodge Durango bearing New Jersey license plate G18RSX, traveling westbound on Franklin County Route 24 towards Malone, New York. BPAs decided to follow the vehicle because out-of-state registered vehicles are commonly encountered in smuggling attempts. This is because the drivers typically aren't from the immediate area. As BPAs followed the Durango, they observed it turn west onto US Highway 11 (US 11) and proceed into Malone, NY. Once in Malone, the Durango turned left on Brewster Street and made several loops through a residential neighborhood, before emerging back onto US 11. BPAs found this travel pattern suspicious and decided to surveille the vehicle with an unmarked Border Patrol vehicle. At this time the Durango travelled south on Academy Street at which point BPAs lost sight of it. The Durango was observed again

3

travelling back west on US 11 at which point it pulled into the Mo's Restaurant parking lot in Malone, NY which was closed at this hour. After sitting parked in the front of Mo's parking lot for approximately 30 minutes, the Durango moved to the back of the back of the restaurant and parked again. A BPA performing foot patrol was able to see inside the Durango and observed that the vehicle was occupied by two individuals. No one exited the vehicle the entire time the vehicle was parked at Mo's.

9.      At approximately 11:55 p.m., the Durango pulled out of the Mo's parking lot and travelled eastbound on US 11 and turned left on Elm Street and left again on Park Street. BPAs followed the vehicle as it continued onto NY State Route 30 in Constable, NY, at which time agents lost sight of the vehicle. Where the BPAs lost sight of the Durango was less than five miles from the international boundary with Canada. The vehicle was encountered again approximately 15 minutes later travelling eastbound on US 11, leaving the area. BPAs suspected the vehicle had picked up individuals in the Burke/Constable area, near the international boundary with Canada, which is an area commonly used for human smuggling activity. Due to the time of night, the presence of an out-of-state registered vehicle near the border, the suspicious travel pattern, and continued surveillance, BPAs performed a vehicle stop on US 11 in Churubusco, NY.

10.      BPAs approached the vehicle, identified themselves and immediately observed a driver, front-seat passenger, and five rear-seat passengers inside the Durango. When asked his citizenship and immigration status, the driver, identified as Jose CHOLULA-Trujillo, claimed to be a Mexican citizen, with no legal right to be in the United States. When asked their citizenship and immigration status, the six passengers claimed to me Mexican citizens with no legal right to be in the United States. The five rear-seat passengers freely

4

admitted to just crossing the border illegally, and stated they were just picked up from the brush.

11.    All seven subjects were detained and transported to the Burke Border Patrol Station for record checks, interviews, and processing. At the Burke Border Patrol Station, the subjects and their personal belongings were searched for weapons and other illicit contraband. During these searches, BPAs seized several electronic devices including the Device described below:

a.   one black Apple iPhone cellular phone, seized from Jose CHOLULA-Trujillo.

12.    At the station, biographical information and fingerprints were entered into the Department of Homeland Security databases for all seven subjects. Record checks revealed that all seven subjects are Mexican citizens with no legal right to be in the United States.

13.    Further checks revealed that CHOLULA-Trujillo has been ordered removed from the U.S. on two prior occasions. The first removal was ordered on August 10, 2011, in Los Angeles, CA. The second removal was ordered on December 22, 2014, in El Centro, CA.[1] On both occasions, CHOLULA- Trujillo departed the U.S. and returned to his native country of Mexico.

14.    CHOLULA-Trujillo did not obtain the express consent of the Attorney General of the United States, or his successor, the Secretary of Homeland Security, to reapply for admission to the United States.

15.    CHOLULA-Trujillo was issued his *Miranda* rights and agreed to speak to agents without an attorney present. In his interview, CHOLULA-Trujillo stated that an

---

[1] On December 22, 2014, in the District of Arizona, CHOLUA-Trujillo was convicted of illegal entry, pursuant to 8 U.S.C. § 1325(a)(1).  *See United States v. Cholula-Trujillo*, 4:14-po-36026 (JR) (District of Arizona, Tucson Division).

unknown person asked him to pick up people and would pay him $2,000.00 to do it. CHOLULA- Trujillo stated when he arrived at the pick-up location, the five passengers exited a field and got into the Durango. CHOLULA-Trujillo stated that he crossed people into the United States illegally in the past.  Additionally, he stated that he was provided an address of where to go via a message sent to his phone and he put that address into his map application on his phone to get to the pickup location.  Although Cholula-Trujillo denied knowing that the five passengers he picked up had illegally entered the United States, he admitted that he had crossed people into the United States illegally in the past.

16.     Additionally, alien smugglers often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the Device, can also be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms such as Facebook are often used by smugglers to find and communicate with customers (aliens).

17.     The Device is currently in the lawful possession of the United States Border Patrol and have been since October 20, 2023.  The Device came into the Border Patrol's possession in the following way: seized incident to arrest. Therefore, while the Border Patrol might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

18.     The Device is currently in storage at the Burke Border Patrol Station.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Border Patrol.

## TECHNICAL TERMS

19.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global p Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.

b.   Digital cameras use a variety of fixed and removable storage media to store their recorded images.   Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature

7

hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.   Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna

can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, I know that cellular phones and GPS devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.  The examination will be performed by representatives from the Department of Homeland Security and their designees.

24.     *Manner of execution.*   Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

//

//

//

//

12

Attested to by the Affiant:

_____  10-31-2023  6:20am

Jason H. Soucis
Border Patrol Agent-Intelligence
United States Border Patrol


I, the Honorable Gary L. Favro United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on October  31  , 2023 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____

Hon. Gary L. Favro
United States Magistrate Judge

13

## ATTACHMENT A

### Property to be Searched

The property to be searched is:

    **a.** one black Apple iPhone cellular phone seized from Jose CHOLULA-Trujillo (the "Device") (as depicted in Fig. 1 below);



Fig. 1: front (left) and back (right) of black Apple iPhone cellular phone seized from Jose CHOLULA-Trujillo.

The Device is currently located at 4525 US Highway 11, Malone, New York 12953. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the Device described in Attachment A that constitute fruits, evidence, and instrumentalities of violations of Title 8, U.S.C. Sections 1324(a)(1)(A)(i) & (v)(I) (bringing or attempting to bring aliens and conspiracy to do the same), 1324(a)(1)(A)(ii) & (v)(I) (transporting or attempting to transport aliens and conspiracy to do the same),  and 1326(a)(reentry of removed aliens) having been committed by Jose CHOLULA-Trujillo and other as-yet unidentified co-conspirators, including:

  a.  Incoming and outgoing calls lists with corresponding date/time of calls;

  b.  Stored telephone and address directories;

  c.  Direct connect and identification numbers;

  d.  Pictures and videos;

  e.  All audio recordings;

  f.  All voice mail recordings;

  g.  All location and GPS data;

  h.  All instant messaging and related stored communications;

  i.  All SMS messages and related stored communications; and,

  j.  Any other notations or electronic storage of any kind.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      a.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      b.   Records of Internet Protocol addresses used;

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3